Motion to dismiss appeal denied February 28; argued May 19; affirmed June 13; rehearing denied July 25, 1933

# STATE *v.* DE GRACE

**(22 P. (2d) 896)**

*Robert G. Smith,* of Portland, for appellant.

*Barnett H. Goldstein,* Assistant Attorney General (Lotus Langley, District Attorney, of Portland, on the brief), for the State.

BELT, J. Defendants were jointly indicted for the crime of unlawfully devising a scheme to defraud in the sale of securities of the Prudential Bancorporation and in committing an overt act in furtherance thereof in violation of section 25-1325, Oregon Code 1930. Separate trials were had and both defendants were convicted. This appeal is from the judgment of conviction against the defendant DeGrace.

■ The first, second, and third assignments of error relate to the ruling of the trial court in overruling the

demurrer to the indictment. The indictment, in substance, charges that while the defendants Johnston and DeGrace were officers and directors of the Prudential Bancorporation they unlawfully devised a scheme, in Multnomah county, Oregon, on May 26, 1931, to defraud certain persons and the public generally by inducing them to purchase shares of stock in the Prudential Bancorporation, a holding company for certain savings and loan associations, to wit: the Prudential Savings and Loan Association, the Union Savings and Loan Association, and the Federal Union Savings and Loan Association, over which the defendants as officers and directors also had charge and control. It was alleged in the indictment that the fraudulent scheme consisted in inducing the members of the above savings and loan associations to transfer their investments therein to the purchase of shares of stock in the holding company. It was also alleged that, to accomplish such fraudulent scheme and purpose, the defendants caused the following false and fraudulent representations to be made:

"(a) That the Prudential Bancorporation, the Prudential Savings and Loan Association, the Union Savings and Loan Association and the Federal Union Savings and Loan Association were all one and the same, and subject to the same state supervision.

"(b) That the Prudential Bancorporation was just another type of savings and loan association, except that it returned seven per cent instead of six per cent on the investment.

"(c) That there was no question as to the safety of the investment in the Prudential Bancorporation; that it was as safe as an investment in a savings and loan association, and that in fact it was a better investment.

"(d) That the purchasers of the securities of the Prudential Bancorporation could withdraw their

money whenever they desired by giving thirty to sixty days' notice.

"(e) That the funds obtained from the sale of said securities in the Prudential Bancorporation were all invested in mortgages on improved real estate and were protected by the state.

"(f) That the Prudential Bancorporation was in a sound, solvent and prosperous condition; that there was absolutely no prospect of any loss to the purchasers of securities in the Prudential Bancorporation because it had under its control and subject to its disposition the assets of various savings and loan associations, aggregating millions of dollars."

After specifically alleging the falsity of the above representations, it is charged that, in furtherance of the said fraudulent scheme, an overt act was committed in Multnomah county, Oregon, on May 26, 1931, by securing from one George Sandell a subscription for 50 shares of stock in the Prudential Bancorporation, for which he paid the sum of $500.

While the indictment is subject to criticism in that evidence, rather than ultimate facts, is pleaded, it unquestionably contains the essential elements of the crime as defined by statute. Section 25-1325, Oregon Code 1930, provides as follows:

"Any person who shall, alone or in conjunction with others, devise, or attempt to devise, any scheme or artifice to defraud any person by securing subscriptions for, or by promoting or negotiating the issuance, transfer, distribution or sale of any security, and who shall, for the purpose of executing or attempting to execute such scheme or artifice, commit any overt act within this state, shall be guilty of a crime and, upon conviction thereof, shall be punished as provided by section 25-1320, Oregon Code, and the amendments thereof."

It is contended that the indictment is vulnerable by reason of the failure to allege that Sandell was defrauded in the sale of the stock. It is not necessary that the "overt act" in itself be unlawful. It becomes unlawful, however, when committed in furtherance of the fraudulent scheme which the statute prohibits. Whether Sandell was actually defrauded is immaterial. Neither was it essential that the fraudulent scheme be successful: *Gruher v. United States,* 255 Fed. 474; *Rumely v. United States,* 293 Fed. 532. Suffice it to say it was alleged that the sale to Sandell was made with the intent and purpose to execute the fraudulent scheme charged in the indictment. The gist of the offense is the fraudulent scheme or artifice. The "overt act" is sufficient if performed in furtherance of such unlawful object or purpose: 12 C. J. 549.

Under section 25-1326, Oregon Code 1930, it is a criminal act to make any false statement affecting the value of stock or securities with the intention to perpetrate a fraud. Hence, in view of the allegations concerning representations made by the defendant, it is urged that the indictment charges more than one offense. The above section and section 25-1325, Oregon Code 1930, upon which the indictment is based, define separate and distinct crimes. Evidence sufficient to convict under section 25-1326 would be insufficient to sustain a judgment of conviction in the action under consideration. The state undoubtedly had the right to prove the particular kind of a fraudulent scheme with which the defendant was charged, even though it involved representations as to value of stock or securities which could be made the basis of a criminal action: *Wilson v. United States,* 190 Fed. 427, 432.

■ The indictment follows the language of the statute and there is no doubt that defendant was plainly and definitely advised as to the nature of the crime. In *State v. Williams,* 108 W. Va. 525 (151 S. E. 852), the court had under consideration a judgment of conviction based upon a statute substantially the same as section 25-1325, Oregon Code 1930. It was contended there as here that the statute was so indefinite and uncertain that the defendant could not be apprised before trial of the nature of the accusation. Such contention was held to be untenable. In the instant action we are at a loss to know in what way the indictment could have been more definite and certain. We conclude that the trial court was right in overruling the demurrer to the indictment.

■ Fourth assignment of error: It is contended that the court erred in denying motion to dismiss the indictment for the reason that defendant was not tried at "the next term of court in which the indictment is triable", as provided by section 13-1602, Oregon Code 1930. Defendant appealed from such order but this court, on November 22, 1932, dismissed the appeal for the reason that defendant filed no brief. Hence, the law of the case in reference to such assignment has been settled adversely to defendant. We are not disposed to reconsider it, especially since it is apparent from the record that such appeal was taken for the purpose of delay.

■ Fifth assignment of error: "The court erred in overruling the defendant's motion for a change of venue." We think there was no abuse of discretion in denying this motion for change of venue, although the question is not properly before the court, since the affidavits in support of the motion were not in-

corporated in the bill of exceptions: *State v. Kline,* 50 Or. 426 (93 P. 237).

Sixth assignment of error: ''The court erred in setting the case for trial against defendant's objections and refusing to postpone the trial of defendant until after the hearing in the Supreme Court upon the appeal of defendant from the order of the court denying his motion for a dismissal and the overruling of the demurrer to the indictment.'' This precise question was presented in the mandamus proceeding (*Johnston v. Circuit Court,* 140 Or: 100 (12 P. (2d) 1027),) instituted for the purpose of staying the trial during the pendency of the appeal from the order .denying the motion to dismiss the indictment. The court in dismissing the alternative writ held, in effect, that the trial court had jurisdiction of the cause notwithstanding the pendency of the appeal from such intermediate order. If the trial court had no jurisdiction, it seems clear to the writer that it was the duty of this court to issue the writ.

Cases involving the jurisdiction of the trial court exercised after the pendency of an appeal from a judgment of conviction are not in point. The instant case is more nearly analogous to *McKenzie v. Los Angeles Life Ins. Co.,* 88 Cal. App. 259 (263 P. 338), wherein the appellate court refused to stay a proceeding in the trial court during the pendency of an appeal from an order denying a motion to change the place of trial, although it must be conceded that the statute of California differs somewhat from that of this state.

We are not unmindful of the general rule that an appeal removes a cause from the lower court and that it can not proceed with the trial during the pendency thereof. However, there are exceptions to this general

rule. An appeal from an intermediate or interlocutory order does not divest the trial court of jurisdiction to proceed in matters not involved in the appeal: 3 C. J. 1259. As stated in *Ex parte City of Montgomery*, 114 Ala. 115 (14 So. 365):

"The lower court, pending an appeal, may proceed in matters which are entirely collateral to that part of the case which is taken up, but it can do nothing in respect of any matter or question which is involved in the appeal, and which may be adjudged by the appellate court."

See also Elliott's Appellate Procedure, section 545, wherein it is said:

"Matters independent of and distinct from the questions involved in the appeal are not taken from the jurisdiction of the trial court."

If the rule of practice were otherwise, a defendant could appeal from an intermediate order merely for the purpose of delay.

■ The seventh assignment of error is based upon the ruling of the court permitting the state to prove transactions similar to the one conducted by the defendant with George Sandell. This evidence was admissible for the purpose of showing the fraudulent intent of the defendant and the court explicitly instructed the jury that it was limited to such purpose: *State v. Cooke*, 130 Or. 552 (278 P. 926), and cases therein cited.

■ Eighth assignment of error: "The court erred in giving the jury the following instruction excepted to by the defendant, to wit: 'Now that we have our positions clearly outlined, as I think we have, I will proceed further in my instructions. I will say this, that in this case an indictment has been returned. *Now, there could be no indictment returned in this case un-*

*less the state believed some law of the state had been violated'."* While this instruction might well have been omitted, we are satisfied that defendant was not prejudiced thereby. In other parts of the charge the jury was admonished that the indictment was not a "part of the evidence in any case" and that it was "merely a formal charge preferred by the grand jury". Furthermore, the court, in effect, instructed that the defendant could be convicted only by proof of the crime as charged in the indictment. There was no danger in this case that the defendant might have been convicted of the violation of "some other law".

Assignments of error 9, 10, 11, 12, and 13 are so clearly without merit that we refuse to encumber the reports by commenting upon them.

 Fourteenth assignment of error: "The court erred in passing judgment upon the defendant before the motion for arrest of judgment and for a new trial was passed upon and before the time allowed for filing the same had expired." There is no statute in this state compelling the trial court to postpone the pronouncement of sentence until after the disposition of the motions for new trial and arrest of judgment. The order of procedure rested entirely within the discretion of the trial court.

The fifteenth assignment of error is based upon denial of the defendant's motion for new trial and arrest of judgment. From what has been said, it follows that there was no error in the denial of this motion.

The judgment of the lower court is affirmed.

RAND, C. J., did not participate in this decision.

BAILEY, J., concurs in result.

KELLY, J. (dissenting). With due deference to the opinion of the court and its able and genial author, I am unable to concur in that part of the opinion respecting assignment of error number six, which holds that the circuit court retains jurisdiction to try a criminal case on the merits after an appeal to the supreme court has been perfected from an order refusing to dismiss the indictment on the ground set forth in section 13-1602, Oregon Code 1930, a demurrer to said indictment and the order of the circuit court overruling it being part of the judgment roll on appeal.

In the case at bar, I find no analogy to the case of *McKenzie v. Los Angeles Life Ins. Co.,* 88 Cal. App. 259 (263 P. 338). That case involves a construction of a statute which expressly prescribes that an appeal "does not stay proceedings without a writ of supersedeas where the order * * * refuses to grant a change of the place of trial of an action". Under that statute, the California court of appeals held that the granting of a stay was discretionary.

If, in Oregon, we had a statute prescribing that upon appeal the jurisdiction of the circuit court to try a criminal cause on the merits shall not be divested without a writ of supersedeas where the order from which the appeal is taken is one refusing to dismiss the indictment, I would concur in the statement that the case at bar and the California case, last above cited, are analogous. In the absence of such a statutory reservation of jurisdiction, in my opinion, the California case is not in point.

*Ex parte City Council of Montgomery,* 114 Ala. 115 (14 So. 365), is a proceeding to procure a writ of mandamus against the chancellor of the southeastern chancery division and the chancery court of Mont-

gomery county to compel a hearing of a demurrer and a motion to dismiss a bill in equity, while an appeal was pending in the supreme court. I quote from the opinion:

"It is manifest, therefore, that the questions we are asked to compel the chancellor and the chancery court to hear and determine are the questions which are now in this court, and which we must determine; and, being here the universal rule ex necessitate is that they cannot also be in the chancery court. A different rule, or the relaxation of the rule in the manner, and to the extent, involved in granting the mandamus now sought, would lead to, or admit of, results which cannot be justified. If, for example, the court below has the power to pass on the demurrers, it also has the power, of course, to dismiss the bill, and the exercise of such power is the action directly invoked by the motion to dismiss for the want of equity. If this was done, we would have the intolerable anomaly of a pending appeal in this court in a nonexistent cause, or the equally unheard of result of a nisi prius court's emasculating, and by indirection dismissing, an appeal properly taken to, and pending in, an appellate court. On the other hand, if the trial court should conclude, on a hearing of the demurrer and motion to dismiss, that the bill contained equity, its decree to that effect would be the merest waste paper as against the judgment of this court to the contrary, on the appeal now here; and, if the lower court's conclusion should coincide with that of this court on the question of the equity of the bill, its decree would still be sheer supererogation, and without force or effect. That there are exceptions to the rule that 'an appeal, properly perfected, removes a case wholly and absolutely from the trial court, and places it in the higher tribunal,' (Elliott, App. Proc. § 541; Allen v. Allen, 80 Ala. 154;) is quite true, (Elliott, App. Proc. § 542;) but the present case is not one of them. The lower court, pending an appeal may proceed in matters which are entirely collateral to that part of the case which is taken up, but it can do nothing

in respect of any matter or question which is involved in the appeal, and which may be adjudged by the appellate court. The operation of the mandamus here prayed would be, as we have seen, to compel precisely this to be done by the court below. The application must be denied.''

Bearing in mind that in the case at bar a general demurrer to the indictment was regularly before this court upon appeal when the trial in the circuit court was had, the conclusion is inescapable that the above quotation announces a doctrine on the point involved diametrically opposite to that of the opinion herein.

In the case of *Johnston v. Circuit Court*, 140 Or. 100 (12 P. (2d) 1027), defendant herein and his codefendant sought to obtain a peremptory writ of mandamus requiring the circuit court to vacate an order made while the case at bar was pending in the supreme court on appeal, which order, thus sought to be vacated, purported to fix a time for the trial of the case at bar in the circuit court.

In my opinion, an order of the circuit court, prescribing a date upon which a trial therein shall be had of a case then pending on appeal in the supreme court, is void for the reason that, after the appellate court has obtained jurisdiction and before the case is disposed of by the reviewing court, the trial court is without jurisdiction to make any order, except such as may be necessary for the presentation of the case on appeal. Neither the order purporting to fix the time for trial in the circuit court, nor the proposed order vacating it, is within the category of those which aid in presenting a proper record for consideration of the case on appeal. Both are beyond the jurisdiction of the trial court while an appeal is pending in the supreme court. To

have granted said petition for a peremptory writ of mandamus, would have necessitated an order by this court requiring the circuit court to act beyond the scope of its jurisdiction, and, for that reason, as I there tried to indicate, I concurred in the action of this court denying the writ. When a court is without jurisdiction to speak, certainly mandamus will not lie to compel it to break its silence.

With the greatest respect for the opinion of the court and for the distinguished jurist, who wrote it, I am compelled to believe, as contended by defendant, that the trial court did not have jurisdiction to try defendant while his appeal was pending in the supreme court. Except in those jurisdictions having statutory provisions, not found in our code, the authorities uniformly and overwhelmingly sustain defendant's contention in that regard. This compels me to dissent.