Argued at Pendleton October 29; affirmed November 26, 1940

# STATE *v.* JAYNES
(107 P. (2d) 528)

*H. H. DeArmond*, of Bend (DeArmond, Hamilton & Goodrich, of Bend, and H. V. Schmalz, of Burns, on brief), for appellant.

*Bert C. Boylan*, District Attorney, of Bend, for respondent.

BAILEY, J. The appellant, Omer I. Jaynes, was indicted for and convicted of the crime of attempting to obtain money by false pretenses, committed by making and filing with Oregon Mutual Fire Insurance Company a proof of loss containing valuations of destroyed personal property totaling $2,012, whereas such property was of a value not to exceed $400, and listing therein items of other personal property which were not in fact destroyed, for the purpose of collecting upon a fire insurance policy issued by that insurance company to the appellant on personal property owned by him.

Under date of July 15, 1937, Oregon Mutual Fire Insurance Company issued to Jaynes a policy of fire insurance in the sum of $700 for a term of three years, covering household furniture and "personal property of every kind" owned by the insured, located in a dwelling house at 80 McKay street at Bend, Oregon.

The defendant rented the house mentioned and shortly before the date of the fire was obliged to vacate it. On December 8 he took his invalid mother from the house to an auto camp at Redmond, Oregon. In the evening of that day his wife, from whom he was separated, came to the house to assist the defendant in packing. Later that evening the defendant was visited by a friend, H. G. Iunker. The defendant left the house about midnight.

Around 2 o'clock in the morning of December 9, 1939, the dwelling house and the personal property located therein were damaged and in part destroyed

by fire. During the same morning, after the fire, the defendant went to the office of Andrew Foley, the agent at Bend of Oregon Mutual Fire Insurance Company, and was given an inventory booklet such as used in listing household effects. Thereafter at his instance his friend Iunker entered an inventory in the booklet, listing the articles which the defendant claimed to have been destroyed in the fire. Three days later the defendant went over the items on his list with Mr. Arnold, adjuster of the insurance company, and at the defendant's request Mr. Arnold filled out the form of proof of loss to correspond with the list of articles and valuations thereof furnished by the defendant. After each item the valuation was written by Mr. Arnold and initialed by the defendant. When the proof of loss was completed it was signed by the defendant and sworn to by him before Mr. Foley as a notary public. Both the booklet and the proof of loss were then turned over to Mr. Foley, agent of the insurance company.

Among the articles of personal property listed by Jaynes in his proof of loss were a diamond ring and a diamond bracelet belonging to his mother, therein valued at $225 and $60, respectively, and a rug of the value of $50. There is evidence that four days after the fire Jaynes, in conference with the district attorney and others, admitted that no such diamond ring, bracelet or rug had been in the house at the time of the fire, and further admitted that in his proof of loss he had listed valuations of three to four times the actual value of the various articles. He then also admitted that the actual value of his personal effects in the house at the time of the fire was between $300 and $400.

The first assignment of error is that the indictment

does not charge the defendant with the commission of a crime, for the reasons (1) that there is no allegation therein that the insurance company offered to pay more than the actual value of the property destroyed, and (2) that the indictment contains no allegation that the insurance company ever estimated the actual value of the property destroyed and offered to pay on the value so determined.

In connection with this assignment of error the appellant directs attention to certain conditions of the insurance policy which provide (1) that the insurance company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and (2) that the ascertainment of the value of the property shall be made by the insured and the company and if they are unable to agree, then by appraisers appointed as provided in the policy.

The argument of the appellant is that the indictment, to be good against demurrer, should, in addition to alleging the existence of the insurance policy, the destruction or partial destruction of the property by fire and the filing of proof of loss, also allege that the other provisions of the policy ''concerning the method of arriving at the value of the property destroyed'' have ''been complied with, particularly in view of the provision in the policy that, notwithstanding the face of the policy is for a certain amount, the company is not obligated to pay that amount, unless it is determined in the manner provided in the policy that that amount of property was actually there.''

■ Section 1 of chapter 107, Oregon Laws 1937, provides that if any person shall, by any false pretense and with intent to defraud, obtain or attempt to obtain from any other person any money or property

whatever, he shall upon conviction thereof be punished in manner prescribed. That section further provides that, ''The presentation by any person of a bill, invoice, statement, account or claim in writing to another knowing the same to contain items of overcharge or false items or wrongful charges with intent to obtain payment thereof, whether obtained or not, shall be deemed a false pretense''.

The crime with which the defendant is charged is that of attempting to obtain money by false pretenses, and not that of having so obtained money. What the insurance company had a right to do by way of investigating to determine the value of the property destroyed has nothing to do with the guilt of the defendant. That in presenting his proof of loss he attempted to induce the insurance company to pay to him the full amount of the policy is apparent.

■ A further assignment of error is based on the admission of the inventory booklet in evidence, over the defendant's objection. The book was admissible to show motive and fraudulent intent on the part of the defendant. Many of the items therein listed were given the same valuation that was used in making proof of loss, and the booklet itself was turned over to the insurance agent on the filing of proof of loss.

The state called L. C. Edmundson as a witness to prove the value of the personal property in the defendant's home immediately preceding the fire. This witness had visited the defendant's home December 7 and 8, to examine the personal property with a view to purchasing it. He testified that he carefully inspected all the personal property in the house, with the exception of the contents of two drawers in the kitchen and the contents of a clothes closet adjoining the bedroom, and described in great detail the condition in

which he found the various pieces of furniture and household goods belonging to the defendant. He further testified that he had bought furniture for his own use and that he knew what was charged and paid for used furniture. He then gave his opinion as to the value of the defendant's household goods. The defendant objected to his testimony concerning the value of the personal property, on the ground that he was not qualified and for the further reason that he had not seen all the contents of the house. The court limited the answer of the witness to the property which he had actually seen.

■ In our opinion, this witness was competent to testify as to the value of the furniture and household goods. One need not be an expert to prove the reasonable or market value of goods such as wearing apparel and household furniture, the value of which is within the knowledge of any one of ordinary intelligence and experience: 20 Am. Jur., Evidence, § 894, p. 752; *O. K. Transfer & Storage Co. v. Neill*, 59 Okl. 291, 159 P. 272, L. R. A. 1917A, 58. See also *Patterson v. Babcock & Peets*, 128 Or. 476, 274 P. 903. The weight to be given this testimony was a question for the jury.

■ The defendant assigns as error the refusal of the court to grant his motion for a directed verdict. In support of this assignment it is argued that before the defendant could be found guilty of the crime with which he was charged it was necessary to show some overt act on his part other than the mere signing of the proof of loss, and in this connection it is asserted that there is no evidence that the proof of loss was ever filed with the insurance company.

The defendant himself testified on direct examination that he filed proof of claim, but did not state with

whom he filed it. Mr. Arnold, the adjuster for the insurance company, testified that in the work he did at Bend in connection with investigating the fire which damaged the defendant's property he was in the employ of the insurance company and was its agent for the purpose of effecting an adjustment of any claim of the insured. Mr. Foley was the local agent at Bend for the insurance company and had prepared and signed the insurance policy as agent of the company and delivered it to the defendant. The proof of claim was signed by the defendant in the presence of both Arnold and Foley, and after it was sworn to before Foley the defendant left it with him, as above stated. There was sufficient evidence to warrant the jury in finding that the proof of loss was delivered to the insurance company by the defendant.

Under one assignment of error the defendant complains of rulings of the court sustaining objections to questions asked three of his witnesses on direct examination. The questions and objections are hereinbelow summarized.

L. B. Jaynes, father of the defendant, as a witness for the defendant, testified that he had purchased a diamond ring. He was asked whether he had seen a diamond ring at 80 McKay street in March, 1939, and answered that he had. He was then requested to tell the court and jury what he knew about the ring, and the court asked if the testimony was not too remote. No offer was made by the defendant as to what was sought to be proved by this questioning.

Mrs. Clifford Thompson, another witness for the defendant, after testifying that she visited the defendant's home stated that she had been there about two or three months before the fire and that she had observed

the furniture in the dining room. She was asked, "What did you find in the dining room?" The court sustained an objection thereto by the district attorney on the ground that the testimony related to a time too remote from the fire. Thereupon the defendant offered to prove by this witness that she had visited his home at frequent intervals and that she would testify that all the articles in the bedroom, kitchen and dining room were as testified to by the defendant, "up to a period of two months before [the fire], and that she saw them."

Mrs. Pansy Jaynes, estranged wife of the defendant, testified as a witness on his behalf that she had at one time lived in the house at 80 McKay street with the defendant and that certain articles were there at that time, and further testified that she was at the house in the evening of December 8. She was asked about a flat-iron and stated that she did not know whether it was in the house on December 8, and then continued, "When I was there before . . ." At this point an objection was made, on the ground that the time was not specified. Further questioning brought out the fact that she had reference to the time when she lived with the defendant as his wife. In attempting to show when that was, counsel for the defendant offered the explanation that it was "about five months before" the fire. The court thereupon sustained the objection.

The defendant testified in detail concerning the contents of his home on the evening of the fire. Mr. Iunker, who was there only a few hours before the fire, also gave specific testimony as to what he saw in the house. Mrs. Pansy Jaynes, who was at the house packing during the evening before the fire, also testi-

fied concerning what household goods were there at that time. In addition to these witnesses, Mrs. W. M. Brown, a neighbor who had visited the house between November 23 and the date of the fire, and Mr. Clinton Watrous, who had installed and repaired a radio in the house, testified in regard to what they had seen in the house at various times during the month preceding the fire.

■ The relevancy of the question asked L. B. Jaynes, as above indicated, is not apparent. He had already testified that he had seen the diamond ring in the de- fendant's home some nine months prior to the fire. What he might have known about it, in addition to that, was not material.

■■ Had Mrs. Thompson and Mrs. Pansy Jaynes been permitted to answer the questions asked them, their testimony would have been merely cumulative. Furthermore, Mrs. Pansy Jaynes had theretofore testi- fied concerning what she saw in the house in the evening before the fire, and what she may have seen there five months or more prior to that time could have little, if any, bearing on what was actually there at the time of the fire. Mrs. Thompson was not certain of the time when she last visited the defendant's house, although she thought it was within two or three months of the fire. The court sustained objections to questions asked these witnesses, on the ground that the time concern- ing which they were required to testify was too remote. Whether evidence is so remote in point of time as to be irrelevant is a matter within the sound discretion of the trial court: *State v. Leopold*, 110 Conn. 55, 147 A. 118; *State v. Saxon*, 87 Conn. 5, 86 A. 590; *State v. Costales*, 37 N. M. 115, 19 P. (2d) 189. We find that there was no abuse of discretion on the part of the trial

court in excluding answers of witnesses as hereinabove related.

Error is further predicated on the failure of the court to give two instructions requested by the defendant. The substance thereof was given by the court, however, in other instructions.

We see no merit in the exception taken by the defendant to the instruction given by the court. There is nothing therein in the nature of comment on the evidence. The instruction complained of is too long to be set out in *haec verba*.

It is our opinion that no error was committed by the trial court prejudicial to the rights of the defendant. The judgment appealed from is therefore affirmed.

BEAN and LUSK, JJ., not participating.