Argued November 28, reversed December 19, 1951

# STATE OF OREGON *v.* MONK

238 P. 2d 1110

*H. R. Winston* argued the cause for appellant. On the brief were Winston & Dimick, of Roseburg.

*Robert G. Davis,* District Attorney, and *Donald S. Kelley,* Deputy District Attorney, of Roseburg, argued the cause and filed a brief for respondent.

Before BRAND, Chief Justice, and HAY, LUSK, LATOURETTE and TOOZE, Justices.

TOOZE, J.

Defendant was indicted by the grand jury of Douglas county for the crime of larceny by embezzlement. He was convicted of having embezzled the sum of $257.25 belonging to Patrick Kelly Post of the Veterans of Foreign Wars and sentenced to imprisonment in the state penitentiary for an indeterminate period not exceeding three years. From that judgment he appeals to this court.

Defendant assigns three alleged errors: (1) that the indictment fails to state facts sufficient to constitute a crime, that contention being made for the first time in this court; (2) the denial of his motion for an order instructing the jury to return a verdict of not guilty; and (3) the giving of an alleged erroneous instruction by the court to the jury. We shall consider these several assignments of error in the order in which they are stated.

Omitting formal parts, the indictment charges as follows:

"FRANK MONK is accused by the Grand Jury for the County of Douglas, State of Oregon, by this Indictment of the crime of LARCENY BY EMBEZZLEMENT committed as follows:

"The said FRANK MONK on the 16th day of January A. D. 1951, in the said County of Douglas

and State of Oregon, then and there being, and then and there being an employee of the Patrick Kelly Post of the Veterans of Foreign Wars located at 115 West Washington Street in the city of Roseburg, County and State aforesaid, there did then and there come into his possession and be under his care by virtue of his employment diverse gold and silver coins, paper currency, bank bills and currency bills, lawful money of the United States of America, checks, etc., to the amount of Two Hundred Fifty-seven and 25/100ths Dollars ($257.25), all being the property of the said Patrick Kelly Post of the Veterans of Foreign Wars, the said Frank Monk then and there so having in his possession and under his care as such employee, did then and there unlawfully and feloniously embezzle and fraudulently convert the same to his own use * * * *''

Defendant's sole contention respecting the sufficiency of the indictment rests upon its failure to allege the status of Patrick Kelly Post of the Veterans of Foreign Wars.

■ The indictment is based upon § 23-523, OCLA, the material portion of which reads as follows:

"If any officer, agent, clerk, employee, or servant of any person, co-partnership, or corporation, shall embezzle or fraudulently convert to his own use * * * any money, property, or thing belonging wholly or in part to such person, co-partnership, or corporation, which may be the subject of larceny, and which shall have come into his possession, or be under his care by virtue of such employment, such officer, agent, clerk, employee, or servant, whether he has, or has not any interest, divisible or indivisible, in such money, property, or thing, shall be deemed guilty of larceny, and * * * punished accordingly * * *."

As defendant points out in his brief, the indictment fails to allege that Patrick Kelly Post of the Veterans

of Foreign Wars is a copartnership or a corporation. There is nothing in the name of the Post as alleged that suggests its status. It might be a corporation, or it might be an unincorporated association, society, or club.

Before one may be indicted under this particular statute, it is essential that he belong to the class of persons amenable to that law. He must either be an "agent, clerk, employee, or servant" of a natural person, or of a copartnership or an "officer, agent, clerk, employee, or servant" of a corporation. His status in this respect should be made to appear in the indictment. Also, it is important that the indictment show on its face that the alleged owner of the property involved is a legal entity capable of owning property.

We quote the following from 29 CJS, Embezzlement, 713, § 31 b (1) and (2):

"(1) In General
" * * * * * *

"It has been held that, where the owner of the embezzled property is an association, partnership, corporation, or other firm or organization, there must be allegations showing such organization to be a legal entity capable of owning property as such or the individuals comprising the same and owning the property should be set out as owners. * * *

"(2) Corporation
" * * * * * * '

"In a prosecution for embezzlement from a corporation, the indictment or information should allege its incorporation and give its corporate name as fixed by law, although, if the injured corporation be known by one name as well as by another, it may be designated by either in the pleading. * . * *'"

■ The reason given for this rule is that there should be sufficient particularity and certainty in an indict-

ment, in a matter of substance, to enable the defendant to prepare for his defense and to plead his acquittal or conviction successfully, should he be again indicted for the same offense. 27 Am Jur, Indictments, and Informations, 651, § 89.

■ In *People v. Cohen*, 352 Ill 380, 185 NE 608, 88 ALR 481, defendant was indicted for larceny and for receiving stolen property, knowing it to have been stolen. The property stolen was alleged to be owned by the Pullman Company, a corporation. Defendant was convicted of receiving stolen property as alleged in the indictment. Though the indictment alleged that the Pullman Company was a corporation, yet, on the trial there was no proof to that effect. The Illinois court said:

> "It has been the settled law of this state, since this court was first organized, that every material allegation in an indictment for a felony must be proved beyond a reasonable doubt before a defendant charged with such a crime can be legally convicted for the same. *One of the material allegations of the indictment in this case is that the Pullman Company, the owner of the property alleged to have been stolen, was a corporation."* (Italics ours.)

To this case, as reported in 88 ALR, commencing at page 485, there is appended an exhaustive note in which the question now under consideration is thoroughly discussed. As pointed out in that note, one line of authorities holds to the proposition that, in a prosecution for larceny or embezzlement, it is necessary to allege that the owner of the property, if not a natural person, is a corporation or otherwise a legal entity capable of owning property. Other authorities are cited where the foregoing rule has been relaxed to some extent. In these latter cases it is held

that, where the name of the company imports an association or a corporation, it is not necessary specifically to allege that it is such. However, under either rule as stated, the indictment in the instant case is defective. The fact of incorporation is not alleged; neither does the name of the alleged owner import an association or a corporation capable of owning property. However, we believe the better rule to be that requiring an allegation in the indictment relative to the status of the alleged owner of the property embezzled.

The indictment in this case is defective and was subject to a demurrer ''that the facts stated do not constitute a crime.'' § 26-832, OCLA.

We are not unmindful of what this court said in *State v. Adler,* 71 Or 70, 74, 142 P 344, viz.:

''When the ownership of the goods is laid in a corporation, the corporate name must be given, but the fact of incorporation need not be alleged, at least if the name imports incorporation.''

The assertion that ''the fact of incorporation need not be alleged'' must be read and considered in conjunction with the further statement ''if the name imports incorporation.'' Moreover, the entire statement is dicta, for in that case it was alleged in the indictment that the owner of the property was a corporation. Furthermore, the charge in that case was for receiving and buying stolen property, not for embezzlement.

■ It will be remembered that the sufficiency of this indictment was not challenged in the trial court by demurrer, or otherwise. The first attack thereon came in this court. It is true, as defendant contends, the indictment can at any stage of the proceedings—even

here for the first time on appeal—be challenged on the ground that it does not state facts sufficient to constitute a crime, but courts do not look with favor upon such delay in the attack. As this court stated in *State v. Du Bois,* 175 Or 341, 345, 153 P2d 521:

> "When a general demurrer is interposed, the indictment is construed strictly against the pleader, but in the absence thereof, it is entitled to a more liberal construction."

The defendant pleaded not guilty and went to trial upon this indictment. On the trial, evidence was offered and admitted without objection that Patrick Kelly Post of the Veterans of Foreign Wars is a corporation. Defendant is a member of that Post.

■ ■ Though the indictment is defective in the respects noted, nevertheless, it is not fatally defective. It is merely a defective statement of the offense charged. The defect was cured by the verdict. In 42 CJS, Indictments and Informations, 1348, § 319, appears the following:

> "In general, a defective statement of the offense is aided or cured by verdict, but not a statement of a defective cause. After verdict, it is only a failure to allege, even imperfectly, any crime known to the law that can be raised. It has been variously stated that an indictment or information will not be held bad after verdict unless it fails in some essential averment necessary in the description of the crime, or unless the indictment is void, charges no offense, and is wholly insufficient to intercept the running of the statute of limitations * * *."

See also *State v. Savan,* 148 Or 423, 36 P2d 594, 96 ALR 497.

In passing upon the other two assignments of error, it is necessary to briefly review the evidence in the case.

Patrick Kelly Post of the Veterans of Foreign Wars is a corporation, with its headquarters at 115 West Washington street, in Roseburg. The Post rents the building in which it is located from one A. J. Hochradel. In the same building in which it holds its meetings, the Post maintains and operates a cocktail lounge and bar under the name of "Veterans' Lounge." This is a commercial enterprise, and not only members are admitted, but also the public. The business ·of the lounge is conducted entirely separate and apart from the activities of the Post, keeping its own books and records and operating more or less independently.

The lounge and its operations are under the direct supervision and control of a house committee composed of three members appointed by the Post. During the period of time involved in this litigation, the house committee consisted of Arthur Roy Cooper, Jim Pollard, and Dwane Graves. Cooper and Pollard were inactive, and the entire supervision and control of the lounge's affairs devolved upon Graves.

On May 15, 1950, defendant was employed to operate and manage the lounge. At the time, no accounting was had to show the financial condition of the business. It was heavily in debt. Defendant was given a blanket authority to operate the activity in the best manner possible.

The books of the lounge were kept by one William Stock. These records were not kept up to date and, as of January 9, 1951, had been brought up to October 31, 1950, only.

Under express authority given him by Graves, defendant conducted the financial affairs of the business in this manner: He paid current bills, such as those for beer and other supplies, in cash; he also paid cash for all extra help and entertainment; ad-

vances in cash were also made from time to time to regular employes; he frequently cashed checks and at times made loans of cash to members. These cash payments were made from the receipts of the lounge. Defendant reported to Stock regarding all receipts and cash disbursements. Whenever there was a surplus of cash on hand, defendant deposited it in the "Vets' Lounge" account at the United States National Bank in Roseburg. Defendant had no authority to issue checks against this account, the only person having that authority during the time in question being William Stock. The bank account was used to pay any balance due on wages of regular employes and to pay current and delinquent bills.

As illustrative of cash payments made by defendant from lounge funds, we set forth the figures from January 8, 1951, to January 22, 1951, inclusive:

| January | 8-10 | $131.45 |
|---------|------|---------|
| " | 11 | 14.40 |
| " | 12 | 138.06 |
| " | 13 | 90.60 |
| " | 14 | 187.50 |
| " | 15 | 57.80 |
| " | 17 | 195.90 |
| " | 18 | 18.00 |
| " | 19 | 46.70 |
| " | 20 | 79.80 |
| " | 21-22 | 185.15 |

In December, 1950, the Post received a letter from Charles W. Glade, one of its members, who was then serving with the United States Navy in South Pacific waters. Glade advised the Post that the wounded servicemen confined to the hospital in Japan were in need of writing materials and stamps. With this information at hand, some members of the Post decided

that a smoker should be held to raise funds for the purpose suggested in the Glade letter and directed defendant to proceed with the necessary arrangements to hold such a smoker on January 9, 1951. The smoker was held on January 9, 1951. The net amount of $257.25 was realized as the result. The determination of this net sum was made by defendant the day following the smoker. The proceeds were placed in the safe in the lounge with other moneys and checks of the lounge. On January 19, 1951, defendant advised two members of the Post, pursuant to their inquiries, that he would have a check representing the amount of net profit made January 9, 1951, ($257.25) at the regular Post meeting on January 23, 1951.

The particular funds taken in on the night of the smoker, together with other funds of the lounge, defendant contends, were actually expended by him over the period of the following few days for payment of current bills, including supplies, rent, music, beer, and mixer, all used at the lounge in connection with the operation of its business.

Although the net amount of $257.25, designated as the "Korean Fund," was to be paid over to the Post by check of the Veterans' Lounge and disbursed, nevertheless, it was defendant's contention that the actual moneys taken in were available for payment of the current bills of the lounge. Graves testified that defendant had the authority to use the funds for the purposes mentioned, but that the lounge was required to replace the same and turn over the sum of $257.25 to the Post, no definite time being fixed for such payment.

On the afternoon of January 23, 1951, defendant was discharged from his employment by Arthur Roy Cooper, representing the Post. Cooper demanded the

keys from defendant, and these, together with all the properties of the lounge, were then delivered by defendant to Cooper. According to the witnesses, there then were on hand $88 in cash, a number of checks, and a special deposit amounting to $45. On that day there was a balance in the bank account of $84.27.

Defendant did not attend the Post meeting on the night of January 23, 1951, and, of course, did not deliver a check to the Post at that time for the sum of $257.25.

An investigation was made by the District Attorney, assisted by the Roseburg police department, respecting defendant's management of the lounge, including his financial transactions in connection therewith. In the meantime, defendant had been arrested and charged with participating in a gambling game at the lounge and had posted bail in the sum of $200 in cash.

In the course of the investigation, defendant was asked to report to the District Attorney's office. There, while being questioned with reference to the $257.25 fund, he admittedly told the District Attorney and the Chief of Police that he had used $200 thereof for bail and the balance to pay current bills of the lounge. On the trial he testified that he did not know why he made such statement in reference to the bail money, as the fact was that the bail money had been advanced to him by one Vang. Defendant produced corroborative evidence concerning this advance of money to him by Vang, and it is admitted that, when the bail was posted, Vang was present with defendant. On the trial defendant contended that all the money was used to pay lounge bills, a use he was fully authorized to make of it; he denied using any of the funds for his own purposes.

When both the state and defendant had rested,

defendant moved the court for a directed verdict of acquittal on the ground:

"that there is no evidence whatsoever in this case to prove that the defendant took any money belonging to Patrick Kelly Post of the Veterans of Foreign Wars and converted it to his own use. There is some evidence in the case that certain moneys were collected but there is also direct evidence in this case that he had full authority to use those particular funds of which he is alleged to have used to his own use. The State has entirely failed to show that of the moneys paid that he had no authority to use them at all for the purposes he did use them and no evidence whatsoever that he converted those to his own use, which is a requirement that he be found guilty of."

■ The court denied the motion and submitted the case to the jury. This was proper. Although the evidence as to the use of the funds by defendant for an improper purpose was rather weak, in the light of the testimony of Dwane Graves respecting defendant's authority, notwithstanding, there was competent evidence in regard to the appropriation thereof by defendant for bail purposes. Graves testified that he never authorized the use of lounge funds by defendant for the purpose of posting personal bail, nor for any other individual purpose outside lounge activities. The gambling game in which defendant is alleged to have participated, and in connection with which he posted bail, was an individual enterprise of his own, and no part of the lounge's business, even though conducted at the lounge at a time when it was closed for business. On the trial defendant did not contend that he had any authority to use lounge funds for his own personal purposes.

However, the admission made by defendant to the District Attorney that he had used a part of these

funds as bail money was sufficient to carry the case to the jury.

■ Finally, defendant assigns as error the giving of the following instructions to the jury:

> "Embezzlement is defined as the fraudulent appropriation of the property of another by a person in whose hands it has lawfully come. Embezzlement consists of converting to his own use by the alleged embezzler of the money or property alleged to have been embezzled *or the placing of it to some use other than the purpose for which it was received by such person.* It is not necessary in this case that, if you should find the material allegations, other material allegations to be true, that it is not necessary that the State shall establish beyond a reasonable doubt that the sum of $257.25 was embezzled but it is necessary that that sum or some material part of it was actually embezzled by the defendant or converted to his own use, as I explained to you awhile ago." (Italics ours.)

In *State v. Marco*, 32 Or 175, 177, 50 P 799, the late Mr. Justice Robert S. BEAN, speaking for the court, said:

> "A felonious intent is an essential ingredient of the crime charged [embezzlement] against the defendant, and before he can be convicted it must distinctly appear that he made an intentionally wrong disposal of the funds of the society, with a felonious intent to cheat and defraud it. The mere fact that he failed or was unable to pay the money over on demand of the committee or to his successor in office is not enough, if that intent is not plainly apparent."

In *State v. Hattrem*, 140 Or 371, 377, 13 P2d 618, this court stated:

> "The offense of larceny by embezzlement can only be shown by a felonious intent in the conver-

sion of the property alleged to have been appropriated: State v. Marco, 32 Or. 175 (50 Pac. 799)."

See also *State v. Johnston,* 143 Or 395, 402, 22 P2d 879; 18 Am Jur, Embezzlement, 583, § 24; 29 CJS, Embezzlement, 748, § 46 b.

In 29 CJS, Embezzlement, 748, § 46 b, the rule is stated thus:

"The jury should be properly instructed as to the necessity of finding that the act was committed with the requisite intent. Instructions which ignore or exclude questions of intent necessarily in the the case are improper. Such issue is not ignored by an instruction that if the jury find from the evidence that accused unlawfully, fraudulently, and feloniously converted to his own use, etc., he should be found guilty; but an instruction authorizing conviction for an unauthorized, wrongful, or unlawful withholding, conversion, or disposition is erroneous, since such words do not imply a criminal intent."

In the first sentence of the instruction given, the court recognizes the necessity of a fraudulent intent, but in the succeeding sentence indicates that no such intent is essential. It is the only instruction given that defined the term "embezzlement" as used in the indictment. It is true that the court did call attention to the essential averments contained in the indictment and instructed the jury that the burden was upon the State to establish those material allegations to the satisfaction of the jurors beyond a reasonable doubt. But the instruction defining embezzlement immediately followed this general outline by the court respecting the essential elements of the crime as charged and was explanatory thereof. Telling the jury that embezzlement consists of "the placing of it [money] to some use other than the purpose for which it was received by such person," without any qualifications

whatever, was, under the facts and circumstances of this case, tantamount to directing a verdict of guilty. On the trial no question was raised by defendant but that the money in question was designed for a particular purpose and so received by him. But he did contend, and offered very substantial evidence in support of his position, that he was fully authorized to make temporary use of those funds for general lounge purposes, the only restriction being that the money so expended should later be replaced from lounge funds and paid over to the Post. The effect of the court's instruction was to eliminate this defense entirely. In no part of its instructions to the jury did the court present the theory of defendant.

It is obvious that the contentions of defendant, if true, were a complete defense to the charge contained in the indictment. If he had authority to use this money, as he claims, or if, acting in good faith, he believed he had such authority and used the same with no intent to injure or defraud the Post or steal the money, he is not guilty of the crime of embezzlement in so doing, even though he might be liable civilly. *State v. Marco,* supra.

The instruction, as applied to the facts in this case, was clearly erroneous and prejudicial.

Judgment reversed.