Argued July 3, reargued September 30, affirmed October 23, 1963

# STATE OF OREGON *v.* MIMS
### 385 P. 2d 1002

*Hattie Bratzel Kremen,* District Attorney, Salem, and *Gary D. Gortmaker,* Deputy District Attorney, argued the cause and filed briefs for appellant.

*Reginald S. Williams,* Salem, and *Elliott B. Cummins,* McMinnville, argued the cause for respondent. On the brief were Osterman & Williams, Salem, and Cummins & Devlin, McMinnville.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, O'CONNELL, GOODWIN, DENECKE and LUSK, Justices.

LUSK, J.

The defendant was found guilty by the verdict of a jury of the crime of attempting to obtain money by false pretenses. He filed a motion in arrest of judgment based upon the ground that the facts stated in the indictment did not constitute a crime, ORS 135.630 (4); 136.810. The court allowed the motion and the state has appealed under the authority of ORS 138.060. The indictment reads:

"The said GEORGE B. MIMS on the 14th day of June, 1961, in the County of Marion and State of Oregon then and there being, and then and there being the owner of certain household furniture,

goods and equipment being the contents of a certain dwelling house located at 930 Orchard Street, North, Salem, Marion County, Oregon, which said contents at the time of a certain fire at said premises on the 14th day of June, 1961, was insured by the said George B. Mims against loss by fire, theft, attempted theft, mysterious disappearance, vandalism or malicious mischief in the Allstate Insurance Company, Skokie, Illinois, in the sum of $8,000.00, did then and there on or about September 12, 1961, feloniously and with intent to injure and defraud make and file with the said Allstate Insurance Company, Skokie, Illinois, at its office in Salem, Marion County, Oregon, a certain proof of loss, subscribed by the said George B. Mims and sworn to by him before a Notary Public for the State of Alabama, in which proof of loss the said George B. Mims falsely and fraudulently did then and there state and represent that the said George B. Mims had had on said premises at the time of said fire miscellaneous articles of household furniture, goods and equipment of a value far in excess of the actual value thereof, to wit: of the value of $6,771.15, whereas, in truth and in fact the said George B. Mims did not, at the time of said fire, have on said premises and destroyed by said fire articles of household furniture, goods and equipment of the value of $6,771.15 or of any value in excess of $4,451.14, by means of which false statements and representations and false and fraudulent proof of loss, the said George B. Mims did then and there unlawfully and feloniously attempt to obtain from the said Allstate Insurance Company of Skokie, Illinois the sum of $2,320.01 in lawful money of the United States of America, the personal property of the said Allstate Insurance Company, Skokie, Illinois, as insurance on said household furniture, goods and equipment and the said statements and representations then and there made by the said George B. Mims were false and fraudulent and the said proof of loss then and there made was neither

good and valid but was false and fraudulent, all of which he, the said George B. Mims, then and there well knew, contrary to the Statutes in such cases made and provided, and against the peace and dignity of the State of Oregon."

■ The crime of obtaining or attempting to obtain money by false pretenses is defined by ORS 165.205, which, so far as here applicable, reads:

"(1) Any person who, by any false pretenses or any privity or false token, and with intent to defraud, obtains or attempts to obtain from any other person, any money or property, * * * shall be punished upon conviction by imprisonment in the penitentiary for not more than five years, or by imprisonment in the county jail for not more than one year, or by a fine of not more than $500, or by both such fine and imprisonment.

\* \* \* \* \*

"(3) The presentation by any person of a bill, invoice, statement, account or claim in writing to another knowing the same to contain items of overcharge, false items or wrongful charges, with intent to obtain payment thereof, whether obtained or not, is a false pretense, and the account, bill, invoice or claim is a false token within this section without the signature thereon of the person presenting it."

Under this statute it was essential for the indictment to allege that the defendant with intent to defraud the insurance company knowingly made a false proof of loss, that is, of loss in excess of that which he actually sustained and which was caused by one or more of the perils insured against—fire, theft, attempted theft, mysterious disappearance, vandalism, or malicious mischief.

■ We find no allegation in the indictment (aside from conclusions, such as "false and fraudulent proof

of loss") that the defendant misrepresented the amount of the loss sustained by him. After an indirect averment that a fire occurred at the premises where the insured property was located it is alleged that the defendant represented that at the time of the fire the defendant had on the premises household furniture, etc., "of a value far in excess of the actual value thereof, to wit: * * * $6,771.15" and that in fact the defendant did not at that time "have on said premises *and destroyed by said fire* articles of household furniture, goods and equipment of the value of $6,771.15 or of any value in excess of $4,451.14, * * *." (Italics added.) No inconsistency is revealed by these allegations nor any falsity. The first relates to the value of all the insured property; the second, to the value of the property that was destroyed by the fire. Both might well be true, for there is no allegation that all the property was destroyed by fire, as in *State v. Jaynes,* 165 Or 321, 107 P2d 528. Nowhere in the indictment is there found an allegation that the defendant made a false statement of the amount of his loss or that the statement that he did make showed a loss in excess of that which he actually sustained. Nor is any representation of fact pleaded which would induce the insurance company to part with anything of value. See *State v. Hammelsy,* 52 Or 156, 157, 96 P 865, 17 LRA NS 244, 132 Am St Rep 686, where it is said:

"* * * 'a false pretense is such a fraudulent representation of an existing or past fact by one who knows it not to be true, as is adapted to induce the person to whom it is made to part with something of value' (2 Bishop's Criminal Law, § 415)."

In fact, there is no allegation that the defendant made any statement whatever to the insurance company of the amount of his loss by fire or any of the other perils

against which he was insured. He could have admitted all the facts alleged without admitting commission of any crime.

■ Attempting to obtain money by false pretenses is a statutory crime and it may be, as counsel for the state argue, that an indictment in the language of the statute is sufficient. *State v. DeGrace*, 144 Or 159, 166, 22 P2d 896, 90 ALR 232. Assuming, without deciding, that this is so (but see 2 Wharton's Criminal Law (12th ed) § 1482), the matter is made no better for the state since the pleader has chosen to allege the specific facts relied upon as constituting the crime and, in doing so, has only succeeded in showing that no crime was committed. These specific averments cannot be disregarded as surplusage for, as stated in 2 Bishop's New Criminal Procedure (1913) § 482:

> "The doctrine is, that unnecessary matter, of a sort or so averred as to negative the offence meant, or otherwise to show the prosecution not maintainable, cannot be rejected as surplusage."

The same rule is thus stated in 4 Wharton's Criminal Law and Procedure (1957) § 1768:

> "No allegations in an indictment or information can be treated as surplusage which, if true, contradict or negative the offense sought to be charged, even if such allegations are superfluous and unnecessary. Such allegations must be accepted as an admission of record by the state, which it cannot refute or ignore in its proof. This rule applies even when the offense is a statutory one and the allegations follow the language of the statute denouncing it, and includes those allegations which operate by way of description or limitation on that which is material. Furthermore, an allegation in an indictment descriptive of that which is essential to the charge therein made is a material allegation and cannot be rejected as surplusage."

See *State v. Leonard,* 171 Mo 622, 626, 627, 71 SW 1017, 94 Am St Rep 798; *State v. Newman,* 29 NM 106, 219 P 794; *State v. Massie,* 72 W Va 444, 78 SE 382, 47 LRA NS 679; *Littell v. The State,* 133 Ind 577, 33 NE 417; note, 47 LRA NS 679, 680; 27 Am Jur 670, Indictments and Informations, § 110.

With particular reference to the crime of obtaining money by false pretenses it is said in 35 CJS 871, False Pretenses § 42:

> "If the pretense is described more minutely than is necessary, such description is part of the indictment and cannot be treated as surplusage."

*Cook v. State,* 162 Ala 90, 50 S 319; *Cowan v. The State,* 41 Tex Cr 617, 56 SW 751, support the text.

■ It is true that an attack on an indictment made for the first time after verdict is not looked upon with favor and a mere defective statement of the offense charged will be cured by verdict. *State v. Peebler,* 200 Or 321, 324, 265 P2d 1081; *State v. Monk,* 193 Or 450, 457, 238 P2d 1110. But that rule has no application where, as here, the indictment charges no offense, *State v. Monk,* supra. The "defect or imperfection" is not "in a matter of form," ORS 132.590.[1]

■ The accused in a criminal case has a constitutional right "to demand the nature and cause of the accusation against him." Constitution of Oregon, Art. I, § 11. The statute provides that an indictment is sufficient if

> "The act or omission charged as the crime is clearly and distinctly set forth in ordinary and concise language, without repetition, in such a manner

---

[1] ORS 132.590 No indictment is insufficient, nor can the trial, judgment or other proceedings thereon be affected, by reason of a defect or imperfection in a matter of form which does not tend to the prejudice of the substantial rights of the defendant upon the merits.

as to enable a person of common understanding to know what is intended and with such a degree of certainty as to enable the court to pronounce judgment, upon a conviction, according to the right of the case; * * *." ORS 132.540 (f).

The indictment in this case fails entirely to comply with these requirements.

The order allowing the motion in arrest of judgment is affirmed and the cause is remanded to the circuit court for further proceedings in conformity with this opinion.[2]

O'CONNELL, J., dissenting.

In an article by Rollin Perkins in 11 Iowa L Rev 297 (1926) entitled "Absurdities in Criminal Proced-

---

[2] In State v. Eddy, 46 Or 625, 81 P 941, 82 P 707, the court reversed a judgment of conviction for error of the circuit court in overruling a demurrer to the indictment and remanded the cause "for such further proceedings as may be necessary, not inconsistent with this opinion." On motion to modify the mandate the court directed a new trial. The reason for the change in disposition of the case was thus explained:

"As our statute directs that, unless a new trial is ordered by the appellate court, the defendant in a criminal action must be discharged on the reversal of a judgment of conviction (B. & C. Comp. § 1486) [now ORS 138.250], we feel compelled, in order to prevent a failure of justice in the case at bar, to order such a trial, which must, nevertheless, depend upon the discretion of the trial court, so far as it relates to submitting the cause to another grand jury or to the district attorney. The effect of such an order, on reversing a judgment of conviction for error committed in overruling a demurrer to an indictment or to an information, and remanding the cause, is equivalent to a direction to the trial court to sustain the demurrer, and tantamount to sending the cause back for such further proceedings as may be proper, thereby leaving the further prosecution of the action to the discretion of the trial court." 46 Or at 630–631.

Since the decision here is not a reversal of a judgment of conviction, but an affirmance of an order in arrest of judgment, it is not necessary to use the form of direction used in the *Eddy* case. The trial judge, however, will have discretion on the remand to order the case resubmitted to the grand jury and if a new indictment is returned a new trial, of course, will follow.

ure," the author prefaces his thesis with a description of the ancient practice of trial by fire and trial by water. He then concludes that "our criminal trials today are conducted with almost as much emphasis upon form and ceremony as were the ancient trials by ordeal." The result is, as he puts it, the "sacrifice of justice upon the altar of formalism."[1]

The majority opinion participates in this sacrificial rite. I have the same criticism here as I expressed in the dissent in *State v. Russell* where this court held that there was a material variance between the proof of theft of a steer and an indictment charging the theft of a heifer.[2] There I urged, unsuccessfully, that we discard the hypertechnical rules of criminal procedure and adopt an enlightened view in the administration of criminal law. I again urge it in disposing of the present case.

The sufficiency of an indictment should be tested against the purposes it is intended to serve. The principal purposes of the indictment are (1) to inform the accused of the charge against him so that he may adequately prepare his defense; (2) to enable him to answer a second charge for the same crime by pointing to the specific conduct for which he was previously tried.[3]

---

[1] Similar criticism of rigid formality in the construction of indictments may be found in Puttkammer, Administration of Criminal Law pp 127–130 (1954); Perkins, Short Indictments and Informations, 15 ABAJ 292 (1929); Scott, Fairness in Accusation of Crime, 41 Minn L Rev 509 (1957) (short form indictment); Note, Criminal Law: Indictment and Information: Sufficiency of Charging a Statutory Offense in the Language of the Statute, 4 UCLA L Rev 132 (1956).

[2] State v. Russell, 231 Or 317, 372 P2d 770 (1962).

[3] State v. Burke, 126 Or 651, 269 P 869, 270 P 756 (1928), dismissed 279 US 811, 49 S Ct 262, 73 L Ed 971; State v. Smith, 182 Or 497, 188 P2d 998 (1948); Puttkammer, Administration of Criminal Law, supra pp. 126, 127.

The indictment in the present case meets these requirements. Anyone capable of reading the English language would have no difficulty understanding that the indictment in this case not only charges George B. Mims with the crime of attempting to obtain money by false pretenses, but specifically designates the conduct which makes up the elements of the crime. The indictment recites that defendant insured his goods with the Allstate Insurance Company; that on a specified date he did "feloniously and with intent to injure and defraud make and file with the said Allstate Insurance Company * * * a certain proof of loss," and that "the said proof of loss then and there made was neither good and valid but was false and fraudulent, all of which he, the said George B. Mims, then and there well knew, * * *." The indictment further charges that "by means of which false statements and representations and false and fraudulent proof of loss, the said George B. Mims did then and there unlawfully and feloniously attempt to obtain from the said Allstate Insurance Company * * * the sum of $2,320.01." The foregoing portions of the indictment are sufficient to charge the crime of attempting to obtain money by false pretenses. Defendant is informed of the time of the alleged crime, the person from whom the defendant attempted to obtain the money, the amount of money he attempted to obtain, the specific instrumentality (proof of loss) by which he attempted to obtain it, the criminal intent, and the scheme by which defendant attempted to obtain the money, i.e., by falsely claiming in the proof of loss the amount of $2,320.01 more than the actual loss. What more does defendant need to know to prepare his defense?

The majority opinion states that "[n]owhere in the indictment is there found an allegation that the de-

fendant made a false statement of the amount of his loss or that the statement that he did make showed a loss in excess of that which he actually sustained." This strikes me as a startling conclusion in light of the language in the indictment which I have set out above. The majority attempts to drain the meaning out of that language by denominating the charge of a "false and fraudulent proof of loss" as a "conclusion," rather than a statement of fact. The attempt to test the sufficiency of an indictment by inquiring whether it states a "fact" or a "conclusion" is fruitless. A statement of a fact is a statement of a conclusion.[4]

The proper test is whether the statement (whatever it is called) is specific enough to inform the accused of the charge for the purposes already mentioned above. In the present case the charge is clearly specific enough to satisfy these purposes.

The majority opinion contains a more serious fallacy. It applies the rule stated in 2 Bishop's New Criminal Procedure (1913) § 482, to the effect that unnecessary matter which negatives the offense meant to be charge cannot be rejected as surplusage. The part of the indictment which is treated as repugnant to the offense meant to be charged is that which recites that defendant represented that he had on the premises goods of the value of $6,771.15, whereas, in fact, he did not have on said premises and destroyed by fire goods of a value of more than $4,451.14. Admittedly

---

[4] Puttkammer, Administration of Criminal Law at p. 130, after stating the rule that an indictment must state facts rather than conclusions, comments as follows:

"A weakness in this proposition which apparently was never fully realized lies in the real impossibility of distinguishing between 'facts' and 'conclusions.' On closer scrutiny what has appeared to be a fact turns out to be only a conclusion resting on remoter 'facts,' which are open to the same criticism themselves. * * *"

the allegation is incomplete in failing to charge that defendant represented that goods valued at $6,771.15 had been destroyed by fire. The only defect in that part of the indictment is its *incompleteness*. The majority fallaciously converts the defect of incompleteness into one of *repugnancy*. The statement in question is in no way inconsistent with the rest of the indictment which, as I have shown, is sufficient to charge the crime. The charge that defendant attempted to obtain $2,320.01 by knowingly filing a false proof of loss is not negated by a recitation that he represented that he had $6,771.15 on his premises and that the fire destroyed no more than $4,451.14. The most that can be said is that the recitation *taken alone* does not charge a crime. But this defect in *failing to state* that defendant represented that $6,771.15 was destroyed by fire does not *negate* the clear charge that he falsely filed a proof of loss by which he attempted to obtain $2,320.01. To negate the latter charge the recitation relied upon by the majority would have to be interpreted to mean that defendant *did not* represent that $6,771.15 was the value of the goods destroyed by fire. The recitation is not susceptible to this meaning. Consequently the rule of repugnancy relied upon by the majority is not applicable.

The judgment of conviction should be affirmed.

ROSSMAN, J., joins in this dissent.