OPINION
Defendant-appellant Robert Kier appeals from his conviction and sentence for Petty Theft. He contends that the trial court erred when it denied his motion to suppress statements he made relating to ownership of money in his possession, which belonged to his employer, Nationwide Warehouse and Storage ("Nationwide"). He argues that his statements should have been excluded because they were made during custodial interrogation without the benefit of Miranda v. Arizona (1966),384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, warnings. He also contends that the trial court erred when it overruled his motion for a judgment of acquittal, because the State failed to introduce evidence to support the conclusion that he formed a criminal intent to convert the money to his own use.
We conclude that Kier was not subjected to custodial interrogation, so that Miranda warnings were not required. We also conclude that because Kier, in response to questioning, asserted that the money was his, the trial court could find that he had formed the intent to convert the money to his use. Accordingly, the judgment of the trial court is Affirmed.
 I
Kier worked for Nationwide as a salesperson. His direct supervisor was William Allen. Loss prevention investigators Mark Gross and Timothy Martin went to Kier's place of employment on March 2, 2001, to investigate potential employee theft. Both entered the store posing as customers.
Martin asked Kier to discount the price of a mattress. Kier refused. Martin purchased the mattress anyway. The transaction was entered into the store computer system properly and Martin received a sales receipt.
Gross also spoke to Kier about buying a mattress. Kier quoted the correct retail price on the mattress, and Gross exited the store. Moments later, Gross reentered the store and told Kier that he was looking for a cheap sofa or love seat. Kier directed Gross to a linen love seat. Kier spoke to Allen, the store manager, and offered to sell the love seat to Gross for $150, cash only. After some additional haggling, Gross told Kier that he needed to go to the bank for cash to purchase the love seat. Gross proceeded to the closest ATM machine and withdrew $200. He marked the serial numbers of the bills on the receipt from the machine, and returned to make the purchase with the marked bills.
Kier made the sale, showed the money to Allen, and placed it in his pocket. This sale was not entered into the computer, and Gross received no sales receipt, although store policy requires both.
Martin reentered the store fifteen to twenty minutes later. He informed Allen that he was with loss prevention and requested an audit reflecting all transactions that had been entered into the store computer system that day. The love seat sale was not among those transactions recorded.
Martin notified police. Meanwhile, he and Gross questioned Kier and Allen about the love seat transaction. Kier and Allen were unable to produce any paperwork relating to this sale. Police officer Robert Bowman arrived. Bowman was told that Martin thought Kier had store money in his possession. Upon the officer's arrival, customers were asked to leave the store, and the doors were locked.
Martin and Bowman questioned Kier, and asked him to empty his pockets. The parties agree that no Miranda warnings were given. While what happened next is disputed, Martin, Bowman and Gross claim that Kier originally told them that he did not have any store money on his person. Kier, however, claims that he told Martin that certain money in his possession belonged to the store. Martin checked the bills in Kier's wallet against the serial numbers Gross had recorded on the ATM machine receipt. Several bills in Kier's possession matched the marked bills used to purchase the love seat.
At some point, the parties agree that Kier told Bowman that he had store money, but that Allen had advised him to keep it until later because of some problems with the store's cash deposit. Allen resigned that same day, throwing his keys at the loss prevention officers as he left the store. Kier was not arrested at that time.
Kier was later charged with Petty Theft and Unauthorized Use of Property. At a bench trial, Kier moved to suppress any statements that he had made relating to ownership of store money, which the court implicitly denied. He also moved under Crim.R. 29 for a judgment of acquittal at the close of the State's case for failure to state a prima facie case of Petty Theft and Unauthorized Use of Property. The court granted the motion for judgment of acquittal with respect to the Unauthorized Use of Property charge, but denied the motion with respect to the Petty Theft charge. At the close of his evidence, Kier renewed his motion for a judgment of acquittal on the Petty Theft charge, which the court again denied. The court convicted Kier and sentenced him to 180 days at the Dayton Human Rehabilitation Center. Kier's sentence was suspended on the condition of his good behavior.
From his conviction and sentence, Kier appeals.
 II
Kier's first assignment of error is as follows:
 KIER WAS ENTITLED TO SUPPRESSION OF STATEMENTS HE ALLEGEDLY MADE IN RESPONSE TO OFFICER BOWMAN'S QUESTIONING RESPECTING OWNERSHIP OF THE MONEY
During trial, Kier orally requested that incriminating statements he had made while being questioned by Bowman and store loss prevention investigators be suppressed. The trial court implicitly denied his motion.
In this assignment of error, Kier argues that the trial court erred by denying his motion because, according to him, his statements were obtained in violation of Miranda v. Arizona, supra. Specifically, Kier contends that he was subjected to "custodial interrogation" by Bowman, but was never advised of his Miranda rights.
The State argues that Kier's failure to have filed a motion to suppress the statements prior to trial precluded their suppression under Crim.R.12. Alternatively, the State argues that Miranda warnings were not required, because Kier was not subjected to custodial interrogation.
The motion to suppress was not made until the middle of trial. Ordinarily, this would end our inquiry, because the motion was not made in timely manner. Crim.R.12(H). However, the State failed to object to the untimely motion. Thus, any error in the trial court having considered the motion was waived by the State's failure to object when the motion was made. State v. Johnson (2000), 88 Ohio St.3d 95,2000-Ohio-276, 723 N.E.2d 1054.
In State v. Biros (1997), 78 Ohio St.3d 426, 1997-Ohio-204,678 N.E.2d 891, the Ohio Supreme Court explained the effect of Miranda on police:
 "[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."
* * *
 Police are not required to administer Miranda warnings to everyone whom they question. "Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect." Only custodial interrogation triggers the need for Miranda
warnings. The determination whether a custodial interrogation has occurred requires an inquiry into "how a reasonable man in the suspect's position would have understood his situation." "[T]he ultimate inquiry is simply whether there is a `formal arrest or restraint on freedom of movement' of a degree associated with a formal arrest."
(Emphasis added.)
Our inquiry, then, is whether Kier was in custody at the time of his interview with Bowman. Kier argues that he was subjected to custodial interrogation, because the doors to the store were locked while he was being questioned by a police officer. According to Kier, a reasonable person in his situation would have considered himself to be "in custody," since he would not think that he was free to leave. We disagree.The record reveals that the company's loss prevention officers, not the police, locked the store, prior to the questioning of Kier. As explained by the United States and Ohio Supreme courts, Miranda warnings are not required for everyone who is questioned — even though police interrogation is often coercive. Oregon v. Mathiason (1977), 429 U.S. 492,494-496, 97 S.Ct. 711, 713-714, 50 L.Ed.2d 714, 719; Biros, supra. Kier was simply questioned by an officer at his place of employment. He was never told he could not leave, and he was not arrested after questioning ceased. From this record, we conclude that the trial court could find, as it evidently did, that Kier was not in police custody during the interview.
Kier's first assignment of error is overruled.
 III
Kier's second assignment of error is as follows:
 KIER IS ENTITLED TO ACQUITTAL ON THE CHARGE OF THEFT BECAUSE THE STATE FAILED TO PROVE EACH AND EVERY ELEMENT OF THE CRIME CHARGED BEYOND A REASONABLE DOUBT
Motions for acquittal pursuant to Crim.R. 29 address the sufficiency of the State's evidence. State v. Thompkins (1997), 78 Ohio St.3d 380,1997-Ohio-52, 678 N.E.2d 591. Under Crim.R.29, a motion for acquittal may only be granted if the evidence is insufficient to sustain a conviction for the offense charged. State v. Dortch (Oct. 15, 1999), Montgomery App. No. 17700. "[P]ursuant to Crim.R.29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." State v.Bridgeman (1978), 55 Ohio St.2d 261, 381 N.E.2d 184, syllabus. In reviewing the court's determination, we must construe the evidence in favor of the State. Dortch, supra.
Kier was indicted for and convicted of a violation of R.C. 2913.02(A), Ohio's codification of the offense of embezzlement, which provides:
 No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
* * *
 (2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent. . . .
R.C. 2913.01 defines the verb "deprive" in relevant part as follows:
(C) "Deprive" means to do any of the following:
 (1) Withhold property of another permanently, or for a period that appropriates a substantial portion of its value or use, or with purpose to restore it only upon payment of a reward or other consideration. . . .
Kier argues that the State failed to put forth sufficient evidence that he intended to deprive his employer of the money. Essentially, he claims his purpose to deprive could not be found from the mere fact that he kept store money in his pocket for a short period of time, as instructed by the store manager.
Both parties argue that our decision in Dortch, supra, governs this dispute. In that case, Dortch, an employee of Steve Rauch, was convicted of one count of Theft, in violation of R.C. 2913.02(A)(1), which provides:
 No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
 (1) Without the consent of the owner or person authorized to give consent. . . .
The charge in that case was based upon Dortch's failure to follow Rauch's explicit directions regarding delivery of scrap iron. Dortch was specifically instructed to deliver the load to Cohen Brothers, but instead took the load to S D Salvage. At trial, Dortch filed a motion for judgment of acquittal claiming that the State's evidence was insufficient to prove the charge, because Dortch had Rauch's consent to obtain possession of the scrap metal. We agreed. Dortch exceeded the scope of that consent by delivering Rauch's property to the wrong scrap yard; however, exceeding the scope of consent was not a violation under R.C.29013.(A)(1), but, instead, "the classic case of embezzlement" under R.C. 2913.02(A)(2). Since the State failed to charge Dortch under the appropriate code section, we granted the motion.
Unlike Dortch, Kier was charged with a violation of R.C. 2913.02(A)(2). Thus, Kier's reliance on Dortch is misplaced. Kier claims that Dortch
stands for the proposition that to be convicted of embezzlement a defendant must actually put the property to his own use. He also cites the case law of several other states regarding the element of intent required for an individual to be guilty of embezzlement. These cases include State v. Monk (Ore.), 238 P.2d 1110; People v. Barrett (Ill. 1950), 90 N.E.2d 94; People v. Douglas (Mich. 1940), 292 N.W. 341; Hurstv. State (Ala.Ct.App. 1926), 108 So. 398; Nelson v. State (Neb. 1910), 126 N.W. 518; Robinson v. State (Ga. 1900), 35 S.E. 57; Waymack v.Commonwealth (Va.App. 1987), 358 S.E.2d 765. We have read these cases, and we agree that they stand for the proposition that an employee's failure to pay over money belonging to his employer, without more, is insufficient to convict an employee of embezzlement. None of these cases, however, stand for the proposition that an individual who actually asserts ownership of property, knowing it to belong to another, lacks sufficient intent to be convicted of embezzlement. As R.C. 2913.01(C)(1) suggests, a person deprives another of his property by withholding it permanently. Whether Kier had actually made use of the money is irrelevant. His assertion that the money was his constituted evidence from which a reasonable finder of fact could infer his intent to withhold the money permanently from Nationwide.
The State presented sufficient evidence to sustain a conviction against Kier under R.C. 2913.02(A)(2). The evidence shows that Kier sold Gross a love seat for $150 in cash. Kier showed the money to Allen, and placed it in his own pocket. The transaction was not properly entered into the system, and Gross was never given a receipt for the sale, despite established store policy to the contrary. Gross, Martin and Bowman testified that when Kier was questioned about the money in his pocket, he did not originally tell them that he had store money, but claimed, to the contrary, that it was all his. He waited until he realized the bills in his possession were marked, and could be identified as the cash from the love seat transaction, before acknowledging that $150 of the cash in his pocket belonged to Nationwide. While Allen's and Kier's testimony contradicts the testimony of Gross, Martin and Bowman, the determination of the credibility of this conflicting testimony was within the province of the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, paragraph one of the syllabus. The evidence supports a finding that Kier had the consent of his employer to accept money from sales of furniture, and that he exceeded the scope of that consent by asserting his ownership of it. Given the foregoing, the trial court did not err in denying Kier's motion for judgment of acquittal.
Kier's second assignment of error is overruled.
 IV
Both of Kier's assignments of error having been overruled, the judgment of the trial court is Affirmed.
WOLFF, P.J., and BROGAN, J., concur.