Submitted on record and briefs November 30, 2006, sentences vacated; remanded for resentencing; otherwise affirmed May 23, 2007

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ROBERT OLEN BURNS,
whose true name is Robert Olen Scarborough,
*Defendant-Appellant.*

Lane County Circuit Court
200410399; A125879

159 P3d 1208

Peter A. Ozanne, Executive Director, Peter Gartlan, Chief Defender, Legal Services Division, and Meredith Allen, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Kaye E. McDonald, Senior Assistant Attorney General, filed the brief for respondent.

Before Landau, Presiding Judge, and Schuman and Ortega, Judges.

LANDAU, P. J.

**LANDAU, P. J.**

Defendant appeals a judgment of conviction for one count of reckless driving, ORS 811.140, one count of second-degree criminal mischief, ORS 164.354, two counts of fourth-degree assault, ORS 163.160, one count of misdemeanor failure to perform the duties of a driver, ORS 811.700, and one count of felony failure to perform the duties of a driver, ORS 811.705. He assigns error to the trial court's denial of his motion in arrest of judgment on the charge of felony failure to perform the duties of a driver, arguing that the indictment with which he was charged failed to adequately allege all of the elements of the offense. He also assigns error to his sentence, arguing that, under *Blakely v. Washington*, 542 US 296, 124 S Ct 2531, 159 L Ed 2d 403 (2004), the trial court erred in imposing a durational departure sentence, imposing consecutive sentences, and calculating his criminal history score on the basis of facts not found by a jury or admitted by him. We reject defendant's challenge to the sufficiency of the indictment, but we agree that his sentencing was unlawful. We therefore vacate defendant's sentences and remand for resentencing, but otherwise affirm.

The relevant facts are not in dispute. Defendant was involved in an automobile accident while driving a van. Attempting to make a right-hand turn off a highway and onto a cross street, he failed to negotiate the turn and collided with a car that was stopped at the intersection. Two people, Tim and Deanna Ruge, were inside the car that defendant struck. They both sustained injuries in the accident. Immediately after the collision, defendant got out of his van and spoke briefly with the Ruges, but did not give his name and address to them. He then fled the scene on foot. Approximately 45 minutes after the accident, police officers found defendant hiding in a pile of logs in a nearby lumber yard. Defendant was arrested and charged in a six-count indictment with reckless driving, second-degree criminal mischief, second-degree assault, third-degree assault, misdemeanor and felony failure to perform the duties of a driver.

With respect to the charge of felony failure to perform the duties of a driver, Count 5 of the indictment alleged:

"The defendant, on or about April 16, 2004, in Lane County, Oregon, did drive a vehicle on a public highway or premises open to the public that was involved in an accident that resulted in physical injury to Deanna and Tim Ruge, and did unlawfully and knowingly fail to remain at the scene of the accident and give to Deanna or Tim Ruge, or a police officer at the scene the name and address of the said defendant; contrary to statute and against the peace and dignity of the State of Oregon."

Defendant's case was tried to a jury, which found defendant guilty on the charges of reckless driving and criminal mischief, and both charges of failure to perform the duties of a driver. On both of the assault charges, the jury found defendant guilty of the lesser included offense of fourth-degree assault.

Defendant then moved for an order in arrest of judgment for failure to allege an offense. He argued that Count 5 of the indictment failed to state facts constituting felony failure to perform the duties of a driver, because it did not allege that he knew there were injuries resulting from the accident, or even that he knew injuries were likely. The trial court concluded that Count 5 adequately alleged the required mental state and denied the motion.

The trial court sentenced defendant as follows: On the misdemeanor convictions for reckless driving, criminal mischief, and failure to perform the duties of a driver, the court imposed concurrent sentences of 60 months' probation. On each of the misdemeanor convictions for fourth-degree assault, the court imposed a sentence of one year in county jail, concurrent with one another but consecutive to the sentences for defendant's other misdemeanor convictions. Finally, on the conviction for felony failure to perform the duties of a driver, the court imposed an upward durational departure sentence of 36 months' imprisonment and 24 months' post-prison supervision, based on the court's finding that defendant was on post-prison supervision at the time of the offense.

■     Defendant first assigns error to the denial of his motion in arrest of judgment, renewing the argument that he made below that Count 5 of the indictment fails to state an

offense. Defendant acknowledges that the indictment does allege that he left the scene "knowingly." He argues it is nonetheless inadequate because it does not specifically allege that defendant had a culpable mental state with respect to the fact that people were injured in the accident. Defendant argues that an accusatory instrument is required to state all the elements of an offense, including the culpable mental state, "so that defendant has a fair opportunity to meet the charge." The state responds that the trial court correctly denied his motion in arrest of judgment because the indictment adequately alleges that he fled the scene of the accident with the required mental state. We agree with the state.

■ An indictment fails to state facts constituting an offense when it fails to allege each of the essential elements of the offense. *State v. Wimber*, 315 Or 103, 109, 843 P2d 424 (1992). An indictment is not required to repeat verbatim the language of the relevant statute, ORS 132.540(3) ("Words used in a statute to define a crime need not be strictly pursued in the indictment, but other words conveying the same meaning may be used."); *State v. Burnett*, 185 Or App 409, 60 P3d 547 (2002), but is required to state, in ordinary and concise language, the elements of an offense "in such manner as to enable a person of common understanding to know what is intended[.]" *Wimber*, 315 Or at 109 (quoting ORS 132.550(7)). That requirement is in keeping with the purposes of an indictment, which this court has identified as:

> "(1) to provide notice so as to enable the defendant to prepare a defense; (2) to identify the crime so as to provide protection against additional prosecution for the same crime; (3) to inform the court as to what charges are being brought against the defendant; and (4) to ensure that the defendant is tried only for an offense that is based on facts found by the grand jury."

*Burnett*, 185 Or App at 415.

■ Consistent with those same purposes, Oregon courts do not require an indictment to charge a criminal offense with great specificity, relying instead on discovery "to inform the defendant of the details of the alleged crime that are necessary to be able to defend against the charge." *State v. Watson*, 193 Or App 757, 761, 91 P3d 765, *rev den*, 337 Or 476

(2004); *see also State v. Wright*, 167 Or App 297, 307, 999 P2d 1220, *adh'd to as modified on recons*, 169 Or App 78, 7 P3d 738, *rev den*, 331 Or 334 (2000) (holding that the availability of pretrial criminal discovery is generally sufficient to cure imprecision in charging instruments).

■■ When the sufficiency of an indictment is challenged by way of a demurrer, it is strictly construed against the state, but when the sufficiency of an indictment is challenged after a verdict, the language of the indictment is held to a less exacting standard and is given a "more liberal construction." *State of Oregon v. Monk*, 193 Or 450, 457, 238 P2d 1110 (1951). When the language of an indictment is challenged after the verdict, the challenge will only be successful if the indictment wholly fails to state " 'any crime known to the law.' " *State v. Brewer*, 7 Or App 158, 160-61, 490 P2d 202 (1971) (quoting *Monk*, 193 Or at 456-57). For example, in *Brewer*, we held that an indictment that charged that the defendant "did * * * unlawfully and willfully embezzle and fraudulently convert * * * to his own use" was adequate despite the fact that it did not specifically allege that the defendant had acted with "felonious intent." *Id.* at 161. In finding that language sufficient, we emphasized that the defendant had challenged the indictment's language *after* the verdict had been reached, and we noted that the language of the indictment closely paralleled the language of the statute. *Id.*

In light of the foregoing principles, defendant's challenge to the sufficiency of the indictment must be rejected. Under ORS 811.705(1), a person commits the offense of failure to perform the duties of a driver to injured persons if he or she "is the driver of any vehicle involved in an accident that results in injury or death to any person" and does not, among other things, stop the vehicle, remain at the scene, exchange information, and render assistance to injured persons. Although the statute itself does not specify any particular mental state, we have held that the state must establish that the defendant acted knowing that he had been in an accident that was "likely to have resulted in injury or death." *State v. Van Walchren*, 112 Or App 240, 245, 828 P2d 1044, *rev den*, 314 Or 574 (1992); *see also State v. Hval*, 174 Or App 164,

171, 25 P3d 958 (2001) (citing *Van Walchren* for the proposition that state must prove defendant acted knowing that accident resulted in injury).

The indictment in this case alleged that defendant "was involved in an accident that resulted in physical injury * * * and did unlawfully and knowingly fail to remain at the scene of the accident." That allegation tracks the language of the statute and the case law construing it. It is not so inscrutable as to wholly fail to state an offense. To the contrary, the wording is more than adequate to "enable a person of common understanding to know what is intended." *Wimber*, 315 Or at 109. We conclude that the trial court did not err in denying defendant's motion in arrest of judgment.

■ ■ Defendant next advances three separate assignments of error related to his sentencing. All three of the assignments are based on the contention that the sentencing ran afoul of the rule announced by the United States Supreme Court in *Blakely* and *Apprendi v. New Jersey*, 530 US 466, 120 S Ct 2348, 147 L Ed 2d 435 (2000), that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt," 530 US at 490. In particular, defendant argues that the trial court erred in (1) imposing consecutive sentences based on the court's implicit findings that the offense met the criteria for doing so under ORS 137.123; (2) imposing a durational departure sentence on the conviction for failure to perform the duties of a driver based on the court's finding that he was on post-prison supervision at the time of offense; and (3) imposing a sentence based on the court's finding that defendant's criminal history score was higher than that encompassed in column I of the sentencing grid.

We address only the second of those three contentions, because it is dispositive. Defendant contends that, under *Blakely* and *Apprendi*, the court was not permitted to impose the departure sentence on the basis of its own findings, in the absence of jury findings or an admission from

defendant himself. The state responds that, in fact, defendant admitted to the fact that he was on post-prison supervision at the time of the offense, so the imposition of the departure sentence did not run afoul of *Blakely* or *Apprendi*. Defendant acknowledges that he admitted the bare fact that he was on supervision at the time of the offense, but he insists that, consistently with our decision in *State v. Allen*, 198 Or App 392, 395-96, 108 P3d 651, *adh'd to as clarified on recons*, 202 Or App 565, 123 P3d 331 (2005), *disposition withdrawn*, 207 Or App 295, 140 P3d 1135, *rev den*, 342 Or 46 (2006), that is insufficient to avoid the requirements of *Blakely* and *Apprendi*. According to defendant, *Allen* demonstrated that a departure sentence imposed on the basis of a defendant's supervisory status requires more than just the fact of supervisory status; it also requires a finding of fact as to defendant's "malevolent quality" and that supervision failed to act as a deterrent.

We agree with defendant. In *Allen*, the trial court imposed a departure sentence on the basis of the defendant's "parole status" at the time of the offense. The defendant challenged the imposition of the departure sentence on *Blakely* and *Apprendi* grounds. The state argued that, because the defendant had admitted his parole status, *Blakely* and *Apprendi* did not apply. We disagreed. Although the defendant had admitted his parole status, we held that the imposition of an upward departure sentence based on that status was nonetheless plain error. We explained that the imposition of an upward departure sentence based nominally on a defendant's supervisory status also requires inferences, beyond the bare fact that the defendant was on supervision, about the "malevolent quality" of the defendant and the failure of supervision to serve as an effective deterrent. 198 Or App at 396. Even where a defendant has acknowledged being on probation, we reasoned, he is still entitled to have a jury determine whether those additional inferences were appropriate to draw by a standard of proof beyond a reasonable doubt. *Id.*

We ultimately withdrew our disposition in *Allen*, but for reasons that were unrelated to the foregoing analysis. We did so because the defendant had waived his right to a jury trial during the guilt phase of the proceedings, and, under

*State v. Gornick,* 340 Or 160, 130 P3d 780 (2006), his sentence was not plainly erroneous because it was possible to infer that he had waived his jury trial right for sentencing purposes. *Gornick* is not applicable here, however, because defendant, whose case was tried to a jury, never waived his jury trial right at any stage of the proceedings. *See State v. Ramirez,* 205 Or App 113, 133 P3d 343, *adh'd to on recons,* 207 Or App 1, 139 P3d 981 (2006), *rev allowed,* 342 Or 256 (2007).

The state concedes that, under *Allen,* the trial court's imposition of a departure sentence was erroneous. The state argues, however, that *Allen*'s analysis is no longer tenable in light of the Supreme Court's reasoning in *State v. Upton,* 339 Or 673, 125 P3d 713 (2005).

*Upton* was a post-*Blakely* case in which the indictment against the defendant alleged the existence of several aggravating factors, including the defendant's "persistent involvement" and the presence of a "vulnerable victim." The defendant demurred to the indictment, arguing that the sentencing guidelines applicable at the time mandated that the judge find compelling reasons for a departure, and that therefore the trial court lacked statutory authority to submit aggravating factors to a jury as required under the Sixth Amendment. The Supreme Court rejected that proposition, explaining that,

> "[u]nder the sentencing guidelines, imposition of a sentence that exceeds that presumptive range requires two steps. First, there must be a determination of whether the state has proved the existence of aggravating or enhancing factors. Second, there must be a determination of whether the factors so proved provide a substantial and compelling reason that justifies imposing a sentence beyond the presumptive range."

*Id.* at 679. The first step, the court explained, involves factfinding and is subject to the defendant's Sixth Amendment right to a jury trial and the requirements of *Blakely* and *Apprendi.* The second step, however, the court characterized as a legal determination for the court, which is not subject to the Sixth Amendment at all:

"Under *Blakely*, the Sixth Amendment entitles a defendant to have a jury determine any aggravating factor that a court may then use to justify a sentence that exceeds the presumptive range. Nothing in *Blakely* precludes a sentencing court from deciding whether jury-determined aggravating factors constitute a substantial and compelling reason to impose a sentence that exceeds the presumptive range."

*Id.* at 681.

In the state's view, our holding in *Allen* that the Sixth Amendment applies both to the determination whether a defendant was on supervision at the time of the commission and to the determination whether being on supervision permits inferences about his malevolent character or his inability to be deterred, conflicts with the distinction that the Supreme Court articulated in *Upton* between determining aggravating factors and determining whether such factors, once determined, constitute substantial and compelling reasons to depart from a presumptive sentence. The state's argument, however, is predicated on an unspoken—and incorrect—assumption that inferences about the defendant's malevolent quality and his inability to be deterred are something other than *factual* inferences.

The point of *Upton* is that, as we have noted, the Sixth Amendment applies to determinations of *fact* that affect the defendant's sentence, but not to determinations of *law* about whether the facts justify departures from presumptive sentences. In *Allen*, we concluded that whether a defendant was on parole at the time of an offense, whether the defendant's character is malevolent, and whether parole failed to serve as an effective deterrent are *factual* issues and, as such, are subject to the Sixth Amendment and the requirements of *Blakely* and *Apprendi*. Nothing in *Upton* suggests that *Allen* was incorrectly decided.

We therefore adhere to the reasoning of *Allen*. It follows that the trial court's imposition of a departure sentence in this case was plainly erroneous; after considering the interests of the parties and the gravity of the error, we choose to exercise our discretion to correct the error. *See Ramirez*, 205 Or App at 125 ("The state has no valid interest in requiring defendant to serve an unlawful sentence; for defendant,

however, a significant liberty interest is at stake."). Because that requires that we remand this case for resentencing, it is not necessary to reach defendant's other assignments pertaining to his sentences.

Sentences vacated; remanded for resentencing; otherwise affirmed.